UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SCOTT A. McNAMARA, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 11-1051 (ESH) |
| ) | |
| CATHERINE A. PICKEN, M.D., et al., ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Scott McNamera ("McNamera") filed this action against defendant Catherine Picken ("Picken") and defendant Washington ENT Group, PLLC ("WENT") for an accounting, conversion, breach of contract, interference with business relations, and defamation. Before this Court is defendants' motion pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings. (*See* Def.'s Mot. for J. on the Pleadings [Dkt. No. 26] ("Defs.' Mot.").) For the reasons stated, this Court grants defendants' motion with respect to Count III, but denies it in all other respects.

## BACKGROUND

McNamera and Picken are both physicians practicing in the District of Columbia. (Compl. ¶¶ 1, 2.) Picken is the sole owner and member of WENT. (Defs.' Answer, Affirmative Defs., & Countercl. ¶ 4 [Dkt. No. 5].[1]). In June 2010, McNamera and Picken began meeting to discuss the possibility of working together and sharing office space. (Answer ¶¶ 13, 14, 17, 21.)

---

[1] Within this document, there are two separate sections ((1) Answer and (2) Affirmative Defenses/Counterclaims) with separately numbered paragraphs. Therefore, this Memorandum Opinion will cite to the specific section of this document (as "Answer" or "Defs.' Countercl.") and the paragraph number.

These discussions continued through that summer and included negotiations to lease office space together near Sibley Memorial Hospital. (*Id*. ¶¶ 14–18, 25, 26.) Plaintiff alleges that during this period, McNamera and Picken agreed to merge their practices. (Compl. ¶ 9.) In August 2010, Picken and McNamera executed a sublease for an office on Mass. Ave. and McNamera moved into that office. (Defs.' Countercl. ¶¶ 27–30.) They sent out printed announcements announcing the merger of their practices. (Compl. ¶ 13.) WENT began billing health insurers for services rendered by McNamera and depositing the money into WENT's account. (*Id*. ¶¶ 14–16.) McNamera was added to the WENT account at Bank of America. (*Id*. ¶ 18.) The parties exchanged communications indicating that each would be expected to contribute equally to the cost of McNamera's move and the initial operating expenses of WENT, and that they would receive an equal salary. (Defs.' Countercl. ¶ 33; Pl.'s Answer ¶ 33.) McNamera alleges that the parties agreed to become partners and share profits and losses equally. (Compl. ¶ 17.) Picken disputes this allegation. (Answer ¶ 17.) McNamera and Picken discussed signing a partnership agreement, but never completed a draft or executed a written agreement. (Defs.' Countercl. ¶ 44.)

  Subsequently, the relationship between McNamera and Picken broke down and, on January 21, 2011, Picken informed McNamera that she wanted to separate their practices. (Compl. ¶ 23.) Picken had come to believe that McNamera had stolen money from WENT and indicated this in an email sent to both McNamera and Suzanne Kujawa, an employee of WENT. (*Id*. ¶ 52.) On February 9, 2011, Picken fired the employee who had assisted McNamera for years. (*Id*. ¶ 26.) Three days later, McNamera moved out of their shared office. (*Id*. ¶ 28.) In April 2011, Picken informed colleagues at Sibley Hospital, where she and McNamera both worked, that he had engaged in unprofessional acts. (*Id*. ¶ 53.)

On May 2, 2011, McNamera filed suit in the Superior Court of the District of Columbia. On June 7, 2011, defendants removed the suit to this Court. Defendants now seek judgment on the pleadings on all counts.[2]

## ANALYSIS

### I. STANDARD OF REVIEW

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed— but early enough not to delay trial— a party may move for judgment on the pleadings." Fed. R. Civ. Pro. 12(c). A motion pursuant to Rule 12(c) is appropriately granted when, at the close of the pleadings, "no material issue of fact remains to be resolved, and [the movant] is clearly entitled to judgment as a matter of law." *Montanans for Multiple Use v. Barbouletos*, 542 F. Supp. 2d 9, 13 (D.D.C. 2008) (citations omitted), *aff'd* 568 F.3d 225 (D.C. Cir. 2009).

When evaluating a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), courts employ the same standard that governs a Rule 12(b)(6) motion to dismiss. *Jung v. Ass'n of Am. Med. Colls.*, 339 F. Supp. 2d 26, 35–36 (D.D.C. 2004).

A court must treat the complaint's factual allegations as true, "even if doubtful in fact," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but it need not accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009). Accordingly, a court must accept the plaintiff's well-pleaded factual allegations to the extent that "they plausibly give rise to an entitlement to relief," *id.* at 1950, and "may thus only grant judgment on the pleadings if it appears, even accepting as true all inferences from the complaint's factual allegations, that the plaintiff cannot prove any set of facts entitling him to

---

[2] Defendants also sought judgment on the pleadings on plaintiff's affirmative defense of fraud. (Defs.' Mot. at 11.) However, plaintiff has subsequently withdrawn that defense. (Counter-Def.'s Resp. to Counter-Pls.' Mot. to Strike the Affirmative Def. of Fraud [Dkt. No. 30].)

relief." *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 265 (D.D.C. 2011).

## II.   COUNTS I, II, AND IV

Defendants seek judgment on Counts I (accounting), II (accounting and conversion), and IV (breach of contract), arguing that these claims fail as a matter of law because plaintiff has not adequately alleged the existence of a partnership agreement. (Defs.' Mot. at 6–11.) This argument is based on the fact that the parties had discussed executing a written agreement and a written partnership agreement had never materialized. (*Id*.) Because the parties had talked about creating a written agreement, defendants argue, the parties could not have had the requisite intent to create an enforceable oral contract.

Under District of Columbia law, parties may create an enforceable oral contact if both parties intend to be bound and they agree on the material terms. *Perles, P.C., v. Kagy*, 473 F.3d 1244, 1249 (D.C. Cir. 2007). To determine if parties intend to be bound by an oral agreement, courts may find the fact that "parties contemplate a writing" to be evidence that they do not intend to bind themselves by an oral agreement. *Id*. However, this is one factor among many, for courts may also consider parties' conduct after they reach an alleged oral agreement, the amount of money at stake, and other factors. *Id.* at 1249–50. Moreover, "'[p]arties [may] make an enforceable contract binding them to prepare and execute a subsequent documentary agreement'" and, in that case, "'[t]hat document is understood to a mere memorial of the agreement already reached.'" *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238–39 (D.C. 1995) (quoting *D.C. Area Community Council v. Jackson*, 385 A.2d 185 (D.C. 1978) (per curiam) (some alternations in original)).

Here, the fact that a written agreement was contemplated is not dispositive of whether an enforceable agreement was created. In this case, plaintiff's factual allegations regarding the

parties' conduct after the alleged creation of the oral agreement are sufficient to support his contention that they created a valid oral contract and, therefore, plaintiff has satisfied his burden under *Ashcroft v. Iqbal*. 129 S. Ct. 1937. Accordingly, this Court will deny defendants' motion for judgment on the pleadings as to Counts I, II, and IV.

## III.   COUNT III

Defendants also move for judgment on the pleadings on Count III, in which plaintiff claims tortious interference with business relationships. (Defs.' Mot. at 11–13.)

To establish a claim on this basis, a plaintiff "must plead '(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage.'" *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting *Bennett Enters. v. Domino's Pizza*, 45 F.3d 493, 499 (D.C. Cir. 1995)). Under District of Columbia law, "a plaintiff must allege business expectancies, not grounded in present contractual relationships, but which are commercially reasonable to expect." *Sheppard v. Dickstein, Shapiro, Morin & Oshinsky,* 59 F. Supp. 2d 27, 34 (D.D.C. 1999) (internal quotation marks omitted). Thus, the resultant damage element of this tort includes "the pecuniary loss of the benefits of the . . . prospective relation . . . [and] consequential losses for which the interference is the legal cause." *AMTRAK v. Veolia Transp. Servs.*, 592 F. Supp. 2d 86, 100 (D.D.C. 2009) (quoting *Restatement (Second) of Torts* § 774A)).

Defendants argue that plaintiff's claim fails because he has not alleged actual damage. (Defs.' Mot. at 11-13.) Plaintiff responds that he has satisfied his burden by alleging that his "efforts to obtain his patients' medical records" have been "frustrated" (Compl. ¶ 39), WENT employees have been instructed not provide his phone number to people and to instead offer another WENT physician's services (*id.* ¶¶ 40–41), and his name has been removed from the

Washington Physician's Directory (*id*. ¶¶ 42, 44, 45).  (Pl./CounterDef.'s Opp'n to Defs./CounterPls.' Mot. for J. on Pleadings ("Pl.'s Opp'n") [Dkt. No. 29] at 5–7.)  Nowhere does plaintiff allege any actual loss of business, time, or money as a result of the alleged interference. *See Kwang Dong Pharm. Co. v. Myun Ki Han*, 205 F. Supp. 2d 489, 497 (D. Md. 2002) (damage element unfulfilled under District of Columbia law where plaintiff did not point to a loss of any specific employment); *cf. Parnigoni v. St. Columba's Nursery Sch.*, 681 F. Supp. 2d 1, 30 (D.D.C. 2010) (damage element fulfilled by loss of enrolled students); *AMTRAK*, 592 F. Supp. at 100 (damage element fulfilled by loss of specific contract); *Gross v. Akin, Gump, Strauss, Hauer, & Feld, LLP*, 599 F. Supp. 2d 23, 32 (D.D.C. 2009) (damage element fulfilled by the failure of prospective client to retain attorney).  In the absence of factual support, plaintiff's allegations of "irreparable harm" (Compl. ¶ 44) and "damages" suffered (*id*. ¶ 46) are insufficient under *Twombly*.  550 U.S. at 555 (observing that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (internal citations omitted).  This Court will therefore grant defendants' motion with respect to Count III.

**IV.    COUNT V**

Finally, defendants move for judgment under Rule 12(c) on plaintiff's defamation claim, arguing that it is insufficient because plaintiff has failed to plead the absence of a common privilege.  (Defs.' Mot. at 13–14.)

To state claim for defamation, a plaintiff must allege:

> (1) [t]hat the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law

6

> irrespective of special harm or that its publication caused the
> plaintiff special harm.

*Howard Univ. v. Wilkins*, 22 A.3d 774, 785 (D.C. 2011) (quoting *Blodgett v. The Univ. Club*, 930 A.2d 210, 222 (D.C. 2007)). An otherwise defamatory statement is, however,

> protected by a common interest privilege if it was '(1) made in
> good faith, (2) on a subject in which the party communicating has
> an interest, or in reference to which he has, or honestly believes he
> has, a duty to a person having a corresponding interest or duty, (3)
> to a person who has such a corresponding interest.'

*Howard Univ.*, 22 A.3d at 785 (quoting *Moss v. Stockard*, 580 A.2d 1011, 1024 (D.C. 1990) (quotation marks in *Moss* omitted)). If a statement is deemed privileged, the plaintiff must prove the privilege was abused "by showing that the statement was made with 'express malice or malice in fact.'" *Howard Univ.*, 22 A.3d at 785–86 (quoting *Moss*, 580 A.2d at 1024).

Defendants challenge only the second element of plaintiff's defamation claim. In the complaint, plaintiff alleges that Picken made false and defamatory statements without privilege to Suzanna Kujama, a WENT employee, and to colleagues and management personnel at Sibley Hospital, where he and Picken both work. (Compl. ¶¶ 52–55.) Defendants have raised the common interest privilege as an affirmative defense (*see* Defs.' Countercl. ¶ 69),[3] and in their motion, they contend that plaintiff was required to plead the factual basis to overcome that privilege. (Defs.' Mot. at 14.)

On the contrary, "the Rules only require a plaintiff to set forth a short, plain statement of its claims; they do not require a plaintiff to anticipate affirmative defenses which might be raised by a defendant." *Chem-Met Co. v. Metaland Int'l*, No. 96-2548, 1997 U.S. Dist. LEXIS 1659 (D.D.C. Feb. 19, 1997) (referencing Federal Rule of Civil Procedure 8(a)); *see also Abbas v.*

---

[3] *See also Howard Univ.*, 22 A.3d at 786 n. 12 (discussing qualified privilege as an affirmative defense).

7

*Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) ("The pleading requirements in the Federal Rules of Civil Procedure, however, do not compel a litigant to anticipate potential affirmative defenses, . . . and to affirmatively plead facts in avoidance of such defenses."); Wright & Miller, *Fed. Practice and Procedure* § 1276 (1990). The plaintiff was not required to anticipatorily negate that defense in his pleadings, and thus the Court cannot conclude, as a matter of law, that "plaintiff cannot prove any set of facts entitling him to relief." *Lans*, 786 F. Supp. 2d at 265.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion with respect to Count III, but denies the motion with respect to all other counts. A separate order accompanies this Memorandum Opinion.

        /s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: January 11, 2012