UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SCOTT A. McNAMARA, M.D.,

    Plaintiff/Counter-Defendant,

        v.                                       Civil Action No. 11-1051 (ESH/JMF)

CATHERINE A. PICKEN, M.D., et al.,

    Defendants/Counter-Plaintiffs.

## MEMORANDUM OPINION

In my Memorandum Order of August 29, 2012 I granted in part and denied in part Defendants/Counter-Plaintiffs' Motion to Compel Plaintiff/Counter-Defendant to Produce Documents and Hard Drives in Response to Defendants/Counter-Plaintiffs' Rule 34 Request for Production of Documents [#37]. Memorandum Order [#52]. Plaintiff/Counter-Defendant ("Picken") seeks attorney fees for having filed that motion. Motion for Fees in Accordance with August 29, 2012 Order [#76].

## LEGAL STANDARDS

Rule 37(a)(5) of the Federal Rules of Civil Procedure requires a court that has granted a motion to compel discovery to award the moving party's reasonable expenses, including attorneys' fees, unless 1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; 2) the opposing party's "nondisclosure, response, or objection was substantially justified;" or 3) other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5).

## ANALYSIS

In opposing the motion for fees, plaintiff/counter-defendant ("McNamara") frequently argues that he opposed the discovery and the motion to compel in "good faith." Opposition to Motion for Fees [#81]. That is, of course, not the standard for objecting to discovery requests, for it would justify objections made with a good heart but an empty head. Instead, the court must be convinced that, viewed objectively, there was legal support for the objection. See Pierce v. Underwood, 487 U.S. 552, 565 (1988) (a party meets the "substantially justified" standard where there is a "genuine dispute" or "if reasonable people could differ" as to the appropriateness of the motion to compel). If there was no legal support given for the objection, then the objection is not justified. Covad Commc'ns Co. v. Revonet, Inc., 262 F.R.D. 1, 4 (D.D.C. 2009).

Moreover, there is another problem with McNamara's approach to objecting to Picken's discovery requests: the objections seem to evolve over time. In many instances, McNamara makes one objection at first, but then supplements that objection or adds a new objection in later pleadings. For example, regarding Document Request No. 5, at first McNamara objected on the grounds that disclosing his personal bank account exceeded permissible discovery. Plaintiff/Counter-Defendant's Response to Request for Production of Documents [#37-3] at 3. In response to the motion to compel, he argued that Picken's counterclaim did not allege that McNamara received payments from any source other than the Eagle Bank account, and statements from that checking account were already turned over. Plaintiff/Counter-Defendant's Opposition to Defendant/Counter-Plaintiffs' Motion to Compel [#41] at 2. Finally, in opposition to the motion for fees, McNamara argues that he "had a good faith belief that his personal bank accounts would not provide any information which would be probative to any issue in this case, and *would constitute a gross invasion of his privacy*." [#81] at 1 (emphasis added). It is clear

that with each bite at the apple, McNamara tweaked his objection or raised new objections, such as the invasion of privacy argument.

This manner of proceeding is intolerable. Rule 34 requires the producing party to either permit the requesting party to make the requested copies of the documents demanded, or "state an objection to the request, stating the reasons." Fed. R. Civ. P. 34(b)(2)(C). The requesting party must decide whether to move to compel only on the basis of that objection. It is pernicious and unfair to the requesting party to force it to make a motion to compel on the basis of the actual objection made, and then hold it to the new objections provided later on. The situation only gets worse when the producing party prevails on its motion to compel, only to confront additional reasons for not producing the documents raised for the first time in opposition to a fee petition. When those objections were neither asserted in response to the original document request, nor asserted in opposition to the motion to compel, they cannot be used to defeat an award of reasonable attorneys' fees. Conversely, when the producing party provides the most fulsome and complete objection initially, the requesting party can make the best judgment possible as to whether to move to compel.

I will not, therefore, condone McNamara's "making it up as he goes along" approach, but instead will consider only the initial objection made and determine whether it and it alone was substantially justified.

With that understanding, I will now turn to each request and the original objection made. I will then address two categories of objections that apply to multiple document requests.

I.    **Document Requests and the Corresponding Original Objections**

    A.    **Bank Accounts**

As noted above, McNamara's original objection to Picken's demand that he produce documents relating to his bank accounts was that doing so "exceeds permissible discovery." [#37-3] at 3.

First, that barely meets the requirement of Rule 34(2)(B) that the responding party state the reasons for its objections. In analogous cases, this Court has persistently held that objections to interrogatories that merely parrot the language of the pertinent rule or claim that a request is "burdensome," without a specific explanation why, are insufficient. See, e.g., Tequila Centinela, S.A. de C.V. v. Bacardi & Co, Ltd., 242 F.R.D. 1, 10 (D.D.C. 2007) ("The responding party cannot just merely state in a conclusory fashion that the requests are burdensome" (internal quotations omitted)); Miller v. Holzmann, 240 F.R.D. 1, 3 (D.D.C. 2006) ("I will not consider the objection that an interrogatory is overbroad and burdensome without a showing by affidavit why it is overbroad and burdensome"); Athridge v. Aetna Cas. and Sur. Co., 184 F.R.D. 181, 191 (D.D.C. 1998) ("The party opposing discovery must show specifically how an interrogatory is overly broad, burdensome or oppressive" (internal quotations omitted)). The objection that a particular demand "exceeds the scope of permissible discovery" is not much better. Moreover, as Picken correctly points out, she specifically alleged that McNamara took patient revenues that should have been paid into the account that Picken and McNamara shared, and placed them in his own bank accounts. Reply Memorandum in Support of Motion for Fees in Accordance with August 29, 2012 Order [#86] at 4. Surely, that allegation made the records of McNamara's bank account relevant to Picken's claims, and the only objection made was meritless and hardly substantially justified.

### B.   Tax Returns

McNamara's initial objection to producing his tax returns is that, since Picken objected to producing her tax returns, McNamara would object to producing his. [#37-3] at 3.  The Federal Rules, however, do not create some kind of mutuality that renders any objection made by one side *ispo facto* legitimate when made by the other side.  Discovery is a process whereby parties obtain information from each other.  Saying that "since she did not show me hers, I will not show her mine" sounds like fourth graders quarreling in the school yard, and not like legal professionals making legitimate objections to a party's discovery demands.  It is, after all, easy to conjure a case where a request that is illegitimate when made to one party is nevertheless legitimate when made to the other.  Indeed, in this case, whether or not Picken should have had to produce her tax returns has nothing to do with whether McNamara has to produce his.  As Picken correctly points out, McNamara claimed that his income was impacted negatively by the termination of his relationship with Picken and the company called "WENT." [#86] at 5.  Tax returns which, of course, are made under penalty of perjury, are vital admissions of the amount of income earned in a period of time and bear directly on McNamara's allegation of a loss of income.  The "tit for tat" objection is juvenile, and hardly substantially justified.

### C.   Agreements to Provide Services

McNamara's original "objection" to produce agreements to provide services between McNamara and any of his patients or a patient of WENT was actually a refusal to produce on the grounds that Picken supposedly already had what she was demanding. [#37-3] at 4.  As Picken points out, however, the courts have rejected as illegitimate any objection based on the supposition that the other party already has what it is demanding. [#86] at 6.  A moment's thought shows how impractical such an objection can be.  The demanding party cannot possibly

know whether it has, in fact, all of the documents it is requesting, because neither side can know to a certainty what the other side has. It is preferable, easier, and more efficient to the producing party to produce what it has, so the demanding party can determine, with all the records in front of it, whether it has all the information it needs and wants. On the other hand, a response such as the one given by McNamara will most often create an immediate and irreconcilable squabble over what the demanding party actually has. That, of course, only postpones the quarrel and renders an expensive and time consuming motion to compel nearly inevitable—precisely what happened in this case. Because such a response makes further discovery motion practice nearly inevitable, it cannot possibly be described as "substantially justified."

### D.  Payments Received

McNamara's only objection to producing documents pertaining to payments he received was that he had no such documents. [#37-3] at 4. This in itself appears to be a legitimate objection since, as I understand it, he was saying that he had no documents, not that Picken already had what she was demanding.

### E.  Evidence of Payments

McNamara produced a spreadsheet listing payments received. He did not, however, produce the documents upon which that spreadsheet was based, as requested by Picken. [#37-3] at 4. Thus, the objection—that McNamara already produced a spreadsheet—did not meet the demand, which sought all documentary evidence of payments McNamara received, including the checks he received from patients and reimbursements from insurers. Id. Since the objection did not actually speak to the demand made, the objection was not substantially justified.

### F.       Documents Pertaining to Interference with Business Relationship

In his complaint, McNamara charged that Picken has frustrated his efforts to obtain his patients' medical records and instructed her employees at WENT to refuse to provide McNamara's telephone number or address to a person who came to the M Street Office to see him or called the office about him. Complaint [#1-1] at 10, ¶¶ 37-40.  He also charged that Picken 1) instructed WENT employees to offer treatment to McNamara's patients by Picken or another WENT physician; and 2) removed McNamara's name from the Washington Physician's Directory without telling him, thereby depriving McNamara of referrals from other physicians. Id. at 11, ¶ 43.  These allegations supported Count Three of his complaint, premised on the tort of Interference with Business Relationship. Id. at 10.

In her opinion of January 11, 2012, however, Judge Huvelle dismissed this count because of McNamara's failure to "allege any actual loss of business, time, or money as a result of the alleged interference." Memorandum Opinion [#33] at 5.

Picken sought documents that identified the business relationships in the caption of Count Three, i.e., "Interference with Business Relationship." [#37-3] at 5.  McNamara's objection was that Count Three had been dismissed. Id.

The request (No. 13) is specifically addressed to "the business relationships that McNamara alleged in Count Three of this Complaint." Id.  That appears to be a direct demand for those relationships that McNamara was claiming Picken interfered with in that count.  His objection—that that count had been dismissed, rendering academic his identifying the relationships with which Picken had interfered—therefore appears to me a reasonable one and substantially justified.

### G. Communications with Garrin

The original objection made to the request for documents relating to communications between McNamara and Garrin was that McNamara was unaware of any such relevant documents, and that, in any event, any such communications were beyond the scope of discovery. [#37-3] at 5. First, the objection that the communications were "beyond the scope of discovery" does not provide any reasons why this is so. Second, McNamara admitted that such communications did exist, and McNamara claimed that three of them were produced.[1]

If they were in fact produced, McNamara may not have complied with his obligation under Rule 26(g), which notes that, by signing the discovery response, the producing party certifies that the disclosure is "complete and correct as of the time it is made." Fed. R. Civ. P. 26(g). The initial objection—that McNamara was unaware of any such communications—is, of course, contradicted by his later representation and disclosure of some documents relating to that request. Whatever the truth that emerges from this tangled web, McNamara's original objection—a lack of awareness—has been disproven by his own actions, and therefore does not qualify as a substantial justification.

### H. Documents Relating to Discharge

This objection regarding documents relating to McNamara's discharge under Chapter 7 is based upon McNamara's argument that the bankruptcy discharge occurred many years before McNamara interacted with Picken and the company called WENT. [#37-3] at 5. But, as Picken points out, her counterclaim charges that McNamara kept from her that he had been declared bankrupt, and thereby defrauded her into entering whatever relationship they had. See Defendants/Counter-Plaintiffs' Answer, Affirmative Defenses, and Counterclaims to

---

[1] Picken insists that she got them not from McNamara but from McNamara's former counsel. [#86] at 10.

Plaintiff/Counter-Defendant's Amended Complaint [#74] at 27-28. That she may not ultimately be able to show sufficient causality between that failure to disclose and the fraud she charges does not render evidence of the alleged fraud beyond the scope of the discovery permitted by Rule 26(b)(1). To the contrary, evidence of the bankruptcy is, of course, relevant to the claim that it should have disclosed; the merits (or lack thereof) of such a claim do not bear, at the discovery stage, on the relevance of the information pertaining to that claim.

###    I.    Net Worth

The original objection made to this discovery request was that evidence of McNamara's net worth was beyond the scope of permissible discovery. [#37-3] at 8. Again, that statement is insufficient because it does not provide a reason for that conclusion. McNamara's assertion that he lost income because of his relationship with Picken and WENT renders relevant the financial information bearing on that assertion. Perhaps an argument could have been made that McNamara's current net worth did not sufficiently bear on his earnings during the period in question, and the request should have been limited to his net worth during that period. But, that argument was not made, and the one sentence objection to all such information was not substantially justified.

###    II.    Objections Applying to Multiple Document Requests

####        A.    Privileged Material

McNamara challenged Requests Nos. 10 and 21 on the grounds that they sought information protected by the attorney-client privilege. [#37-3] at 4, 6. McNamara, however, never filed a privilege log, and this Court ordered him to do so. [#52] at 2; [#86] at 8. Merely claiming privilege as a defense to production is insufficient. The controlling rule is unequivocal: the party who "withholds information. . . by claiming that the information is privileged. . . must

9

(1) expressly make the claim; and (2) describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5).  Thus, claiming privilege without complying with subsection (2), by submitting with the Rule 34 (b)(2) response a so-called "privilege log" required by Rule 26(b)(5), is an insufficient and illegitimate response.  Indeed, when a litigant, like McNamara, claims privilege but does not produce a log, his opponent must move to compel compliance with the rule with which McNamara should have complied in the first place.  Far from being "substantially justified," claiming privilege without complying with the applicable rule is an inexcusable violation of that rule.

      **B.**      **Excessive Fees**

According to the declaration of Picken's counsel, Tracy D. Rezvani, she and her colleague, Mitchell J. Rotbert, spent 23.57 hours 1) drafting a letter to McNamara's counsel; 2) meeting with their client and staff to prepare the motion to compel; and 3) researching, drafting and editing it. <u>Declaration of Tracy D. Rezvan [sic] in Support of Motion for Fees in Accordance with August 29, 2012 Order</u> [#76-1] at 1-2.  They also incurred $48.63 for using electronic legal research. <u>Id.</u> at 2.

In response to this detailed showing, McNamara contents himself with two words: the billing "appears excessive." [#81] at 2.  He does not provide any analysis whatsoever of why the hours or the hourly rate charged by Rotbert and Rezvani are unreasonable.  Thus, he makes no legitimate objection to what is sought.  In any event, I have reviewed the submission and find it reasonable.

The two lawyers spent 23.57 hours, or just about three days, collecting the record of a series of protracted discovery disputes, creating the narrative of what happened, researching the

legal issues, and preparing a comprehensive motion that was well-written, researched, and argued. Three working days to do that is about right. I will allow what they seek, $7,311.25, but will discount it by $1,000 to allow for my finding that two objections (documents related to "payments received" and to the ultimately-dismissed Count Three, the substantial interference with business relationship) were substantially justified. Picken also seeks $2,984.56 in legal fees for the 6.32 hours it took to prepare her motion for fees and the supporting documentation. [#76-1] at 2. This is also reasonable, and I will award the full amount. Finally, Picken seeks $48.63 in fees associated with legal research. I will allow this as well. In total, I will award Picken $9,364.44 in fees ($7,311.25 + $2,984.56 + $48.63 - $1,000 for two substantially justified objections = $9,364.44).

## CONCLUSION

For the above-stated reasons, defendant/counter plaintiffs' <u>Motion for Fees in Accordance with August 29, 2012 Order</u> [#76] will be granted in part. A separate <u>Order</u> accompanies this <u>Memorandum Opinion</u>.

_____
JOHM M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE